IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

VALLEY PIZZA, LLC and
STEPHEN LENGAL,

     Plaintiffs,

v.                                                   No. 2:25-cv-0022-JHR-GJF

VERSATILE MERCHANT SOLUTIONS LLC,

     Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM [DOC. 9]

THIS MATTER is before the Court on Defendant Versatile Merchant Solutions, LLC's Motion to Dismiss Amended Complaint for Failure to State a Claim for Relief or, in the Alternative, Summary Judgment. [Doc. 9]. Plaintiffs Valley Pizza, LLC and Stephen Lengal responded [Docs. 16, 17], and Versatile replied [Doc. 19]. The parties consented to the undersigned presiding over this matter. [Docs. 12–14]. Having considered the briefing, the record, and the relevant law, the Court GRANTS the motion to dismiss without prejudice.

### I.    BACKGROUND

Plaintiffs filed their original complaint on January 9, 2025 [Doc. 1] and issued summons to VMS Software, Inc. After voluntarily dismissing VMS Software [Doc. 4], Plaintiffs filed the operative amended complaint against Versatile Merchant Solutions, LLC on January 24, 2025. [Doc. 5]. In lieu of filing an answer, Versatile filed the instant motion to dismiss. [Doc. 9]. The parties completed briefing on March 18, 2025. [Doc. 20]. The amended complaint asserts five claims against Versatile: 1) violation of the Computer Fraud and Abused Act, 18 U.S.C. § 1030; 2) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961;

1

3) violation of the New Mexico Unfair Trade Practices Act, NMSA 1978 § 57-12-1; 4) New Mexico common law fraud; and 5) New Mexico common law unjust enrichment. [Doc. 5].

Versatile argues Plaintiffs' claims are facially implausible because they merely assert conclusory statements lacking factual support. [Doc. 9, at 4]. Versatile moreover contends the statute of limitations bars every claim for relief. *Id.* at 10. Plaintiffs primarily respond that Versatile's motion should be denied because Versatile did not confer with Plaintiffs before filing the motion per Local Rule 7.1(a). [Doc. 16, at 6]. They also argue the amended complaint establishes sufficient factual allegations "in light of this matter being pled on information and belief" and believe they can recover on some theories if allowed to amend. *Id.* at 7. Especially so, Plaintiffs urge, given that Versatile's motion provided information previously unknown to Plaintiffs. *Id.* at 10, 11. In this regard, Plaintiffs cast the blame on Versatile for engaging in unnecessary motions practice:

> Had the Defendant conferred with the Plaintiffs' counsel prior to filing their motion, as Defendant was obligated to do . . . it is eminently reasonable to presume that Defendant would have provided the plaintiffs with those pieces of documentary information affixed to their Motion to Dismiss, those documents would have been examined and, if necessary, an amendment would have been executed then. But that is not what occurred; what occurred is that the Defendant ignored its obligation under the rule, filed its Motion, ignored and rebuffed the opportunity to withdraw its motion and comply with the rule and here we are.

[Doc. 16, at 12].

The reply urges the Court to decide the motion on its merits instead of the technical conferral issue, noting that Local Rule 7.1(a) affords the Court discretion to determine whether noncompliance with the rule warrants dismissal. [Doc. 19, at 1, 2]. While emphasizing that precedent favors adjudication on the merits instead of procedural grounds, *Id.* at 2 (collecting cases), Versatile points out it attempted to rectify the failure to confer but Plaintiffs' counsel refused to state Plaintiffs' position. *Id.* at 2, 3.

Versatile also disputes Plaintiffs' assertion that the attachments to the motion to dismiss are novel and not previously available. *Id.* at 3. It contends the attachments "have been in possession of Plaintiffs since December 2, 2019[,] at the latest, and Plaintiffs' assertion otherwise is so erroneous as to implicate" Rule 11. *Id.* This is because the attachments, such as nonparty Balboa Capital's breach of lease agreement lawsuit against Plaintiffs in California state court [Doc. 9-1] and associated service documents [Docs. 9-3, 9-4], are public records Plaintiffs possessed. *Id.* at 3, 4. Thus, Versatile argues Plaintiffs' framing of summary judgment as "grossly improper" because Versatile just produced new documents is "knowing deception[] on the Court." *Id.* at 5.

Versatile also critiques Plaintiffs' response as a copy-and-paste job for each claim, devoid of substance addressing their deficiencies. *Id.* at 5. Versatile urges the failure to respond on the merits amounts to Plaintiffs conceding the arguments in favor of dismissal. *Id.* (collecting cases). Versatile discusses each claim to demonstrate Plaintiffs' inability to surmount dismissal arguments. *Id.* at 5–8. It further posits that Plaintiffs "make several statements admitting that the statute of limitations expired on all claims," such as admitting they did not "have sufficient facts to constitute a cause of action . . . at the moment of the event complained of but much later." *Id.* at 9.

Versatile contends no genuine factual dispute is present if the Court converts the motion to dismiss to a motion for summary judgment based on the attachments to the motion to dismiss. Plaintiffs discovered (or should have discovered) the allegedly fraudulent lease agreement "at the very latest on December 2, 2019, when both Plaintiffs were served with the Balboa lawsuit." *Id.* This December 2, 2019, accrual date makes all claims untimely, Versatile argues, under the claim-specific statutes of limitations. *Id.* at 10. Versatile moreover says Plaintiffs' failure to properly dispute any of their proffered undisputed material facts renders those facts admitted. *Id.* In sum, Versatile urges leave to amend the complaint would be futile. *Id.*

## II.     LEGAL STANDARD

Defendants may move for dismissal for part or all of a complaint for failure to state a plausible claim for relief. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible" when the court can reasonably infer from the complaint that the defendant is liable for the plaintiff's injuries. *Id.* Only factual allegations matter to this determination and the court must disregard assumptions, speculation, or legal conclusions within the complaint. *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021) (citing *Twombly*, 550 U.S. at 555); *Bledsoe v. Carreno*, 53 F.4th 589, 606–07 (10th Cir. 2022). In addition, while not needing lengthy or detailed facts the plaintiff must elaborate beyond "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. However, the court must construe the complaint and make all reasonable inferences from it in favor of the plaintiff, who must "must nudge the claim across the line from conceivable or speculative to plausible." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

## III.     ANALYSIS

**A.     Plaintiffs' Amended Complaint Fails to State Any Claim for Relief.**

After examining each claim, the Court finds that none of Plaintiffs' causes of action have plausible factual support to state a claim for relief. The Court will dismiss them for the below reasons.

    1.     <u>Count One: Computer Fraud and Abuse Act ("CFAA").</u>

        *i.     Relevant law.*

The CFAA is primarily a criminal statute but also provides a civil cause of action when an individual accesses a computer either "without authorized access" or "exceeds authorized access" and obtains information therefrom. 18 U.S.C. § 1030(a)(2)(c), (a)(4). "The CFAA prohibits a number of different computer crimes, the majority of which involve accessing computers without authorization or in excess of authorization, and then taking specified forbidden actions, ranging from obtaining information to damaging a computer or computer data." *ATS Grp., LLC v. Legacy Tank & Indus. Servs. LLC*, 407 F. Supp. 3d 1186, 1191 (W.D. Okla. 2019) (quoting *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1131 (9th Cir. 2009)); *see* 18 U.S.C. § 1030(a)(1)-(7)). The District of Wyoming has explained the CFAA "is not an anti-sneaky, disgruntled, and deceitful employee statute. Nor is it an anti-distracted and internet-surfing employee statute. It is an anti-hacking statute. It prevents outside hacking with the 'without authorization' language and inside hacking with the 'exceeds authorized access' language." *Cent. Bank & Tr. v. Smith*, 215 F. Supp. 3d 1226, 1237 (D. Wyo. 2016).

While the amended complaint is not specific on its face, the Court interprets Plaintiffs' CFAA claim to allege that Versatile exceeded its authorized access to Plaintiff's computers. The Supreme Court addressed the meaning of "exceeding authorized access" in *United States v. Van Buren*, defining it as "access[ing] a computer with authorization and [using] such access to obtain or alter information in the computer that the accessor is not entitled so to obtain." 593 U.S. 374, 379 (2021) (citing 18 U.S.C. § 1030(e)(6)). The Supreme Court interpreted the phrase "not entitled so to obtain" as "information one is not allowed to obtain by using a computer that he is authorized to access." *Id.* "Access" refers to "the act of entering a computer system itself or a particular part of a computer system such as files, folders, and databases." *Id.* at 1656 (internal citation omitted). Thus, "exceeding authorized access" is essentially "entering a part of the system to which a

5

computer user lacks access privileges." *Id.* Notably, this is not intended to "criminalize every violation of a computer-use policy." *Id.* at 1661. Similarly, it does not impose liability based on the purpose, manner or circumstance for which the information was obtained. *See id.* at 1654-55.

      ii.      *Application.*

Plaintiffs have failed to plausibly state a claim for a CFAA violation. Plaintiffs contend Versatile violated the CFAA because it either lacked or exceeded authorization to use their protected computer system to facilitate a loan with Balboa. [Doc. 5, at 7, 8]. Plaintiffs allege Versatile proposed to Plaintiffs a credit card processing program "run by [Versatile], utilizing computer and software systems." *Id.* at 5. Plaintiffs understood the program would compensate them for processing credit cards on Versatile's behalf "on Plaintiffs' computer and software systems." *Id.* at 6. However, Plaintiffs allege Versatile "did not disclose that Plaintiffs [were] signing up for a loan with a non-party financial institution, 'Balboa Capital,' to fund the Plaintiffs' access to the credit card process program." *Id.* Consequently, Plaintiffs put a stop-pay on funds to Balboa upon realizing Versatile's fraud. *Id.* Plaintiffs contend they would not have signed up for this program had they known it involved a loan with Balboa. *Id.*

Plaintiffs' factual allegations do not support a plausible CFAA claim. Plaintiffs concede they consented to Versatile accessing their computer systems in order to implement the POS systems. What Versatile allegedly did with that access—e.g., facilitate a fraudulent loan with Balboa Capital—is where a CFAA claim would lie. However, the Court cannot identify any specific facts that would support Versatile entering a part of Plaintiffs' system to which it lacked access privileges. Plaintiffs' conclusion that Versatile allowed Balboa to illegally access Plaintiffs' system implies that Versatile exceeded its authorized access. While Plaintiffs allege Versatile never received permission to facilitate the Balboa loan, Plaintiffs fail to develop the necessary

allegation that Versatile facilitated the loan by accessing a part of their computer system beyond their access privileges. *See Van Buren*, 593 U.S. at 386–87. Therefore, the Court dismisses Count One.

    2.    <u>Count Two: Racketeer Influenced and Corrupt Organizations Act (RICO).</u>

        i.  *Relevant law.*

RICO prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, [from] conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). To state a civil RICO claim, a plaintiff must establish that a defendant "(1) conducted or participated in the affairs (2) of an enterprise (3) through a pattern (4) of racketeering activity." *San Miguel Hosp. Corp. v. Publix Supermarket, Inc.*, No. 23-cv-00903, 2025 WL 872972, at *3 (D.N.M. Mar. 19, 2025) (quoting *George v. Urb. Settlement Servs.*, 833 F.3d 1242, 1248 (10th Cir. 2016)).

The statutory definition of "enterprise" is "any individual, partnership, corporation, association, or other legal entity, and any union or groups of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "Racketeering activity" may be any of the criminal offenses listed in the statute. 18 U.S.C. § 1961(1). A "pattern" requires at least two acts of racketeering activity. 18 U.S.C. § 1961(5). Civil RICO claims require strict causation: "the plaintiff is required to show that a RICO predicate offense 'not only was a "but for" cause of [its] injury, but was the proximate cause as well.'" *San Miguel Hosp. Corp.*, 2025 WL 872972, at *3 (citing *CGC Holding Co., LLC v. Broad & Cassel*, 773 F.3d 1076, 1088 (10th Cir. 2014)). The statute of limitations for a civil RICO claim is four years. *Robert L. Kroenlein Tr. ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 1274 (10th Cir. 2014).

    *ii.*  *Application.*

  The Court finds Plaintiffs have failed to plausibly state a claim for a civil RICO violation on several fronts. First, Plaintiffs fail to meet the "pattern" element. Versatile argues that Plaintiffs failed to allege "any sort of pattern of racketeering activity" because the "entirety of Plaintiffs' RICO claim rests on the one incident of Versatile allegedly inducting Pizza Valley to enter into a 'fraudulent' loan" with non-party Balboa. [Doc. 9, at 6]. The Court agrees. The definition of "pattern" requires two predicate racketeering acts to constitute a "pattern." *See San Miguel Hosp*, 2025 WL 872972, at *3. Plaintiffs allege a singular fraudulent inducement, which is on its face insufficient to sustain the "pattern" element. Second, Plaintiffs fail to meet the "racketeering activity" element. Plaintiffs allege Versatile committed the enumerated racketeering activities of financial institution fraud, extortionate credit transactions, and wire fraud. [Doc. 5, at 8, 9]. Versatile says Plaintiffs fail to allege sufficient facts to support any type of racketeering activity. *Id.* at 6. Even if sufficient facts were plead, it argues these crimes do not apply to this incident to the extent that "[i]t appears as though Plaintiffs listed these criminal acts without reviewing their definitions." *Id.* at 6, 7. Plaintiffs' response does not address this deficiency but relies on "discovery to ascertain" whether any racketeering acts occurred. [Doc 16, at 8, 9].

  The Court agrees that the amended complaint's conclusory statements that Versatile engaged in a pattern of racketeering activity of financial institution fraud, extortionate credit transactions, and wire fraud are insufficient to state a claim. [Doc. 5, at 8, 9]. After reviewing the statutory definitions of these crimes and the facts alleged, the Court cannot identify colorable support for the alleged racketeering acts nor a pattern of same. Nor can the Court speculate as to why Plaintiffs believe Versatile committed financial institution fraud, extortionate credit transactions, or wire fraud at least twice. The Court thus dismisses Count Two.

### 3. Count 3: New Mexico Unfair Trade Practices Act ("UPA").

#### *i. Relevant law*

The UPA requires the disclosure of material facts "reasonably necessary to prevent any statement from being misleading." *Belanger v. Allstate Fire & Cas. Ins. Co.*, 588 F. Supp. 3d 1249, 1262 (D.N.M. 2022) (quoting *Smoot v. Physicians Life Ins. Co.*, 2004-NMCA-027, ¶ 15, 87 P.3d 545, 549). A valid claim for a relief under the UPA requires a plaintiff to show that: "1) the defendant made an oral or written statement that was either false or misleading; (2) the false or misleading representation was knowingly made in connection with the sale of goods or services; (3) the conduct complained of occurred in the regular course of defendant's business; and (4) the representation may, tends to, or does deceive or mislead any person." *Id.* (citing *Mulford v. Altria Grp., Inc.*, 242 F.R.D. 615, 621 (D.N.M. 2007)).

#### *ii. Application.*

Plaintiffs' conclusory allegations of financial institution fraud, extortionate credit transactions, and wire fraud are insufficient to show that Versatile "plausibly committed these acts." [Doc. 9, at 7]. Versatile urges that Plaintiffs "have failed to assert any one alleged misrepresentation" to support this claim. *Id.* at 8. Moreover, Versatile points to Balboa as the proper subject of a UPA claim because the "extension of credit or collection of debts would logically be in the regular course of Balboa's trade or commerce," not Versatile's business of a point-of-sale program. *Id.* at 8. Plaintiffs' response speculates that discovery may revive the claim but provides no further factual support.

The Court agrees with Versatile. Plaintiffs have not pled facts supporting each element but rather reproduced the same legal conclusions as those plead under the civil RICO claim. *Id.* at 8–10 (engaging in financial institution fraud, engaging in extortionate credit transactions, and

engaging in wire fraud). Repackaging these categorical misdeeds as UPA violations with nothing to distinguish them from the facially inadequate RICO allegations falls short of stating a claim.

    4.    <u>Count Four: New Mexico Common Law Fraud.</u>

    *i.    Relevant law.*

Common law fraud in New Mexico requires a plaintiff to prove: "(1) a misrepresentation of fact, (2) either knowledge of the falsity of the representation or recklessness on the part of the party making the misrepresentation, (3) intent to deceive and to induce reliance on the misrepresentation, and (4) detrimental reliance on the misrepresentation. *Williams v. Stewart*, 2005-NMCA-061, ¶ 34, 112 P.3d 281, 290 (citing UJI 13–1633 NMRA, and *Unser v. Unser,* 1974-NMSC-063, ¶ 26, 526 P.2d 790, 795–96). A plaintiff must prove these elements by clear and convincing evidence. *In re Bolles*, 593 B.R. 832, 839 (Bankr. D.N.M. 2018) (citing *Tomlinson v. Burkett,* No. A-1-CA-35610, 2018 WL 3868704, at *6 (N.M. Ct. App July 18, 2018)).

"Ín alleging fraud . . . a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where and how' of the alleged fraud . . . and must set forth the time [and date], place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006) (citations omitted) (abrogated on other grounds by *Cochise Consultancy, Inc. v. United States ex rel. Hunt*, 587 U.S. 262 (2019)).

    *ii.    Application.*

The same fatal pleading defect taints this claim as well. Versatile argues the failure to plausibly plead fraud warrants dismissal. Plaintiffs do not explain the nature of the misrepresentation was nor whether the speaker knew it was untrue. [Doc. 9, at 9]. Nor did Plaintiffs

make any showing of detrimental relance. *Id.* Rather than address these issues, the response generally insists "the allegations specify their basis in an in-depth manner and these are the elements of New Mexico's version of common law fraud, drawn from the facts pled." [Doc. 16, at 9]. "Defendant clearly believe[s] it did not occur," Plaintiffs continue, "[and] that is for them to prove in discovery[.]" *Id.* at 10.

Plaintiffs fail to state a claim for common law fraud. The amended complaint merely restates the elements of a common law fraud claim with the addition of the terms "Plaintiffs" and "Defendant." [Doc. 5, at 10]. The Court cannot locate support for these elements in the factual background without speculation. Challenging Versatile to prove the lack of fraud during discovery does not make the claim plausible at the pleading stage.

     5.    <u>Count Five: New Mexico Common Law Unjust Enrichment.</u>

         i.   *Relevant law.*

To sustain a common law unjust enrichment claim in New Mexico, a plaintiff must show that "(1) another has been knowingly benefitted at one's expense (2) in a manner such that allowance of the other to retain the benefit would be unjust." *Belanger*, 588 F. Supp. 3d at 1266 (quoting *City of Rio Rancho v. Amrep Sw. Inc.*, 2011-NMSC-037, ¶ 54, 260 P.3d 414, 428–29). However, "New Mexico law strongly disfavors unjust enrichment claims when remedies exist under contract law." *Id.* at 1267 (quoting *Steadfast Ins. Co. v. Legacy Safety & Consulting, LLC*, No. 15-cv-00218, 2015 WL 12803775, at *3 (D.N.M. June 25, 2015)).

         ii.   *Application.*

Versatile argues that Plaintiffs "fundamentally misunderstand the nature of unjust enrichment" to compensate a harmed party despite the lack of a contractual relationship. [Doc. 9, at 9, 10]. This is not the case as here, Versatile explains, where the parties had a written contact

precluding availability of unjust enrichment. *Id.* at 10 (citing *Arena Res., Inc. v. OBO, Inc.*, 2010-NMCA-061, ¶ 14, 238 P.3d 357, 360–61). Versatile also contends Plaintiffs' insufficient pleading merits dismissal, especially the absence of facts showing Versatile benefitted at Plaintiffs' expense. *Id.*

Again, Plaintiffs' mere recitation of the elements is insufficient to state a claim. The Court agrees that the existence of a contract between Plaintiffs and Versatile likely supplants an unjust enrichment claim. *See Arena Res.*, 2010-NMCA, ¶ 15–17. Moreover, even if Plaintiffs meant to direct the unjust enrichment claim toward nonparty Balboa, the skeletal elements do not advance the claim past this Rule 12(b)(6) challenge. For these reasons, that Court finds that Plaintiffs' amended complaint [Doc. 5] has failed to state any claim for relief under Rule 12(b)(6).

**B.     The Court grants Plaintiffs leave to amend to address their general pleading deficiencies and Versatile's statute of limitations defense.**

1. <u>The Court will not convert the motion to dismiss into a motion for summary judgment at this stage but finds Versatile's claim-specific statutes of limitations are correct.</u>

*i.    Parties' Arguments.*

Versatile argues that the applicable claim-specific statutes of limitations bar all of Plaintiffs' claims. [Doc. 9, at 10, 11] (collecting cases explaining the four-year statute of limitations for civil RICO, UPA, fraud, and unjust enrichment claims and the two-year statute of limitations for CFAA claims). Versatile says Plaintiffs' discovery of the allegedly fraudulent contract over five years ago, by virtue of Balboa's 2019 California lawsuit against Plaintiffs, makes all claims untimely. *Id.* at 11. Versatile asks the Court to consider extrinsic evidence of Balboa's state court complaint and lease agreement attached to the motion to dismiss (thus converting this to a summary judgment motion) or take judicial notice of the relevant dates in order to find all claims time-barred. *Id.* at 11; [Doc. 9-1]. Versatile proffers three dates on which Plaintiffs could have discovered their

alleged injury: April 24, 2019, "when Balboa Capital sent Valley Pizza a letter regarding the lease agreement"; September 23, 2019, "when Valley Pizza put a stop payment on the payments to Balboa Capital; or, "at the very latest, December 2, 2019, when Balboa Capital served Pizza Valley [sic] with its lawsuit" for failing to make lease payments. *Id.* at 13, 14. Because over five years have passed from each date, Versatile urges the statute of limitations bars every claim." *Id.* at 14.

Plaintiffs counter that summary judgment should fail because the undisputed material facts "clearly conflict with the allegations in the complaint." [Doc. 16, at 11]. They protest that summary judgment is "absolutely not appropriate" with "[a]ll facts appear[ing] to currently be in dispute" without discovery having begun. *Id.* They moreover insist that "even if Plaintiffs must abandon some causes of action," the six-year statute of limitations for a written contract still saves "many other" claims. *Id.*

        ii.       *Relevant law.*

It is well-settled that a motion to dismiss analysis limits the court to "assessing the legal sufficiency of the allegations contained within the four corners of the complaint." *Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995). In this regard, a court may not consider attachments outside the pleadings without converting the motion to one for summary judgment. *Alexander v. Oklahoma*, 382 F.3d 1206, 1213 (10th Cir. 2004)).

The statute of limitations is an affirmative defense which may be resolved on a motion to dismiss "when the dates given in the complaint make clear that the right sued upon has been extinguished." *Radloff-Francis v. Wyoming Med. Ctr., Inc.*, 524 F. App'x 411, 412–13 (10th Cir. 2013) (quoting *Aldrich v. McCulloch Props., Inc.*, 627 F.2d 1036, 1041 n.4 (10th Cir.1980)). A plaintiff does not have to anticipate a statute of limitations argument and plead defensive facts in advance, but if a complaint includes dates suggesting untimely claims, the plaintiff must plead

13

facts to toll the statute of limitations. *Salt Lake City Corp. v. Sekisui SPR Americas, LLC*, No. 217-cv-01095, 2018 WL 6026822, at *5 (D. Utah Nov. 16, 2018).

> iii.   *Application.*

The Court agrees with Versatile that the statute of limitations is four years for civil RICO[1], common law UPA, common law fraud, and common law unjust enrichment claims[2], and two years for CFAA[3] claims. *See* [Doc. 9, at 15-17].

Nevertheless, the dates provided in the amended complaint fail to make clear that "the right sued upon has been extinguished." *Radloff-Francis*, 524 F. App'x at 412–13. The Court can only identify two dates in the amended complaint, "on or about February, 2019" when Versatile allegedly first contacted Plaintiffs and "in October of 2022" when Versatile allegedly dropped Plaintiffs from the payments processing program. [Doc. 5, at 5, 7]. Versatile argues Plaintiffs intentionally omitted key dates and feigned surprise at Balboa's California state court lawsuit in order to obfuscate the timeliness concerns.

While this may be so, the Court refrains from finding all claims time-barred at this stage. The Court has already found Plaintiffs failed to state any claim for relief. Accordingly, the Court declines to convert the motion to dismiss to a motion for summary judgment to assess the merits of the attachments to the motion to dismiss. Plaintiffs may be able to forestall Versatile's statute of limitations argument in a new amended complaint. *See Asphalt Trader Ltd. v. Beall*, No. 20-cv-00155, 2021 WL 4133874, at *4 (D. Utah Sept. 10, 2021).

2. <u>The Court grants Plaintiffs leave to amend their complaint.</u>

> i.   *Relevant law.*

---

[1] *Kirchhefer*, 764 F.3d at 1274 (finding claims barred by RICO's four-year statute of limitations).
[2] NMSA § 37-1-4 (1978).
[3] 18 U.S.C.A. § 1030(g).

A court may deny leave to amend if amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Amendment is futile if the pleading "as amended, would be subject to dismissal." *Fields v. City of Tulsa*, 753 F.3d 1000, 1012 (10th Cir. 2014). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365 (10th Cir.1993). The decision whether to grant leave to amend is left to the discretion of the district court. *See Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009); *Foman*, 371 U.S. at 182.

      ii.      *Application.*

The Court cannot yet conclude that amendment would be futile. As stated above, Plaintiffs now have an obligation to plead facts addressing the specific dates and two-year and four-year statutes of limitations in Versatile's motion to dismiss. *See Salt Lake City Corp.*, 2018 WL 6026822, at *5. While the Court presently affords Plaintiffs the benefit of the doubt that they were previously unaware of the various dates and information in Versatile's motion, they have been put on notice and cannot use ignorance to avoid timeliness issues. Should Plaintiffs fail to cure the pleading deficiencies or substantively address the limitations arguments as described in this order, their amended pleading is subject to dismissal with prejudice for futility of further amendment. *See* Fed. R. Civ. P. 15(a)(2); *Foman*, 371 U.S. at 182.

## IV.    CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss Amended Complaint for Failure to State a Claim for Relief [Doc. 9] is **GRANTED** and Plaintiffs' Amended Complaint [Doc. 5] is **DISMISSED WITHOUT PREJUDICE.** Plaintiffs may file a second amended complaint in compliance with this order **within thirty (30) days of its entry.**

**IT IS SO ORDERED.**

                                                          _____
Hon. Jerry H. Ritter
United States Magistrate Judge
Presiding by Consent